**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES OF AMERICA,

        *v*.                                Dkt. No 1:20-CR-0126-LMM-JSA

THOMAS ADDAQUAY,
NANA ADDAQUAY, and
SACOYA LYONS,

                   Defendants.

**DEFENDANT THOMAS ADDAQUAY'S MOTIONS IN LIMINE
AND MEMORANDUM OF LAW IN SUPPORT**

NOW COMES Defendant Thomas Addaquay, by and through the undersigned counsel, and respectfully submits his Motion *In Limine* for evidentiary rulings in anticipation of trial. Specifically, the defense requests that the Court grant the following relief: (1) to restrict the government's ability to introduce statements or testimony from unindicted co-conspirators who were not identified by the government; (2) to hold an evidentiary hearing regarding the admissibility of any co-conspirator statements the government intends to use in its case-in-chief; (3) to prevent the government from having witnesses testify remotely at trial; (4) to instruct the government to provide a Witness List at least seven days before trial, and 3500 material at least three days before trial; (5) to prevent the government

1 of 19

from introducing expert witness testimony at trial since no experts have been

identified or summary reports provided; and (6) to prevent the government from

making reference to the total amount of losses alleged in the Indictment until those

losses are actually proven at trial. Each of these requests is addressed in turn below

and submitted for the Court's consideration and ruling.

## 1.  Unindicted Co-Conspirators List

During a pre-trial conference held in this matter on January 6, 2021,

Magistrate Judge Anand ordered the government to disclose the identities of all

unindicted co-conspirators referenced in the Indictment. In response, on or about

February 16, 2021, AUSA Jeff Brown emailed defense counsel stating that "The

government responds that Kevin Edwards, Michael Awiti, Simon Wedderburn,

Amar Medjedovic and Benjamin Grover are unindicted conspirators."  (**Exhibit A**,

email dated February 16, 2021).  Nevertheless, AUSA Brown then proceeded to

state that "The government also notes that Rule 16 discovery included the names of

the referenced unindicted conspirators and *other individuals that received proceeds*

of the charged fraud and money laundering scheme." (Emphasis Supplied) *Id*. This

ambiguous secondary statement inevitably casts doubt as to whether or not the

government considers these 'other individuals' who allegedly received proceeds to

be part of the list of unindicted conspirators. Moreover, due to the voluminous

amount of discovery in this case and the lengthy period of time it covers, it is impossible to ascertain the names of these 'other individuals' referenced by the government with any degree of certainty.

Therefore, due to the inherent ambiguity of AUSA Brown's statement and the extensive amount of discovery in this case, the defense respectfully requests a ruling from the Court that the only unindicted co-conspirators whose statements could potentially be admissible at trial under Fed.R.Evid. 801(d)(2)(E) are those specifically identified by name, to wit: Kevin Edwards, Michael Awiti, Simon Wedderburn, Amar Medjedovic and Benjamin Grover. As directed by the Court, the defense is entitled to this information to avoid unfair surprise at trial and to properly prepare a defense or to file any additional motions *in limine* or seek suppression of any proposed statements.

## 2.  Admissibility of Co-Conspirator Statements Under FRE 801(d)(2)(E)

The defense expects the government to attempt to introduce at trial statements made by at least some of the above-named unindicted co-conspirators, be it in the form of emails, text messages, phone calls or witness testimony. Thus, the defense respectfully requests that the Court hold a hearing outside the presence of the jury to determine the admissibility of any such statements.

Co-conspirator statements, whether introduced at trial by cooperating witnesses or through agents testifying about emails and texts, are admissible because they are not considered hearsay evidence under Fed.R.Evid. 801(d)(2)(E). Nevertheless, "[f]or evidence to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence these things: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy." *United States v. Hasner*, 340 F .3d 1261, 1274 (11th Cir. 2003); *United States v. Harris*, 886 F.3d 1120, 1127 (11th Cir. 2018).

In *Bourjaily v. United States*, 483 U.S. 171 (1987), the Supreme Court held that the trial court may consider the out-of-court co-conspirator declaration which the government seeks to admit in deciding whether there was a conspiracy – a predicate for the admissibility of the statements before the jury. However, the Court also cautioned that such hearsay statements are presumptively unreliable and, therefore, while they may be considered in deciding whether there was a conspiracy involving the declarant and the defendant, **there must be some independent corroborating evidence of the defendant's participation in the conspiracy**. *United States v. Tellier*, 83 F.3d 578 (2d Cir. 1996) (Emphasis

Supplied). See also, *United States. v. El-Mezain*, 664 F.3d 467, 502 (5th Cir. 2011); *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir.1999); *United States v. Clark*, 18 F.3d 1337, 1341–42 (6th Cir. 1994). Thus, in determining the admissibility of co-conspirator statements, the trial court may consider both the co-conspirator's statements and independent external evidence. *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002), cert. denied, 537 U.S. 1089, 123 S.Ct. 707, 154 L.Ed.2d 634 (2002). And if a co-conspirator's statement is the only evidence of the conspiracy, then a defendant's objection to the statement's admission should prevail. See, e.g., *United States v. Al-Moayad*, 545 F.3d 139, 173–74 (2d Cir. 2008).

Similarly, Fed.R.Evid. 104 adopts the position that the judge alone should decide preliminary questions as to the competence of evidence, and the jury decides preliminary questions as to the conditional relevancy of the evidence. "We are therefore convinced that the preliminary questions of conditional relevance envisioned by Rule 104(b) are those which present no such danger of prejudice to the defendant. They are questions of probative force rather than evidentiary policy." *United States v. James*, 590 F.2d 575, 579 (5th Cir. 1979)[1]. Thus, Rule

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

104(a) allocates to the judge alone the responsibility for deciding the admissibility

of co-conspirator statements, and due to the risk of prejudice to the defendant, this

should be accomplished at a separate nonjury hearing, as permitted under Rule

104(c). *Id*. at 578.

> In fact, in *James*, the court stated:

> > Such evidence **endangers the integrity of the trial because the relevancy and apparent probative value of the statements may be so highly prejudicial as to color other evidence even in the mind of a conscientious juror**, despite instructions to disregard the statements or to consider them conditionally. As a result, such statements should be evaluated by the trained legal mind of the trial judge. (Emphasis Supplied)

Id. at 579. It is important to note, however, that such a hearing is not mandatory

but rather the "preferred" method "whenever reasonably practicable," so that the

trial court can assess the evidence of a conspiracy before admitting co-conspirator

statements. See: *United States v. Espino–Perez*, 798 F.2d 439, 441 (11th Cir.

1986).[2] Neither *Bourjaily* nor Rule 801(d)(2)(E) addresses the issue of whether

district courts may provisionally admit co-conspirators' statements, but a *James*

hearing is unquestionably the preferred method particularly for complex criminal

---

[2] The Seventh Circuit has also ruled that the preferable procedure is to require the government to preview its evidence of a conspiracy prior to admitting statements under Rule 801(d)(2)(E). *United States v. Shoffner*, 826 F.2d 619 (7th Cir. 1987)

cases where there is a high degree of risk that the defendant will be prejudiced by provisional admissibility. *United States v. Hasner*, 340 F .3d 1261, 1274 (11th Cir. 2003).

A conspiracy is established through evidence that two or more persons have agreed to commit an offense, that defendant knew of this agreement and that defendant agreed to participate. See *United States v. Carrascal-Olivera*, 755 F.2d 1446 (11th Cir. 1985). Statements made by one co-conspirator prior to the time that the defendant becomes a member of the conspiracy are therefore not admissible against that defendant. Moreover, where there are multiple conspiracies, it is error to admit a statement which merely advances some other conspiracy not involving the defendant against whom it is admitted. *United States v. Garcia*, 13 F.3d 1464 (11th Cir. 1994)

Here, there are multiple conspiracies alleged in the Indictment and three separate defendants, not to mention the five above-referenced unindicted conspirators. So an offer of proof by the government as to the existence of a conspiracy involving Addaquay and the named declarant, as well as a preview that the proposed statement to be introduced was in fact made during the course *and* in furtherance of the conspiracy, is warranted. For all these reasons, as well as for the sake of judicial economy and to avoid unnecessary delays once the trial starts, a

*James* hearing would be the preferred method to address these issues outside the presence of the jury.

### 3.  No Remote Testimony by Trial Witnesses

As of the filing of this Motion, the government has given no indication as to whether or not it will seek to have witnesses testify remotely at the trial. In an effort to preempt such a request by the government, the defense hereby seeks a ruling from the Court that remote testimony will not be allowed at the trial because it would be a violation of Addaquay's Sixth Amendment right to cross-examine the witnesses against him.

The seminal case in this regard is *Maryland v. Craig*, 497 U.S. 836 (1990). There the Supreme Court held that while "the Confrontation Clause reflects a preference for face-to-face confrontation . . . that [preference] must occasionally give way to considerations of public policy and the necessities of the case." *Id*. at 848. The Court went on to explain that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial **only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.**" *Id*. (Emphasis Supplied) In fact, Eleventh Circuit precedent acknowledges that *Craig* remains the proper test for admissibility of two-way

video conference testimony. *See Harrell v. Butterworth,*251 F.3d 926, 930 (11th

Cir. 2001).

In *Craig*, the Court stated that whenever a request is made by the

government to have witnesses testify remotely, the trial court must: (1) hold an

evidentiary hearing and (2) find: (a) that the denial of physical, face-to-face

confrontation at trial is necessary to further an important public policy and (b) that

the reliability of the testimony is otherwise assured. *Id.* at 850, 855. Following

these principles, in *United States v. Yates*, 438 F.3d 1307 (11th Cir. 2006), the

court held that video testimony violates Confrontation Clause. Specifically the

court stated:

> The district court made no case-specific findings of fact that
> would support a conclusion that this case is different from
> any other criminal prosecution in which the Government
> would find it convenient to present testimony by two-way
> video conference. All criminal prosecutions include at least
> some evidence crucial to the Government's case, and there
> is no doubt that many criminal cases could be more
> expeditiously resolved were it unnecessary for witnesses to
> appear at trial. **If we were to approve introduction of
> testimony in this manner, on this record, every
> prosecutor wishing to present testimony from a witness
> overseas would argue that providing crucial prosecution
> evidence and resolving the case expeditiously are
> important public policies that support the admission of
> testimony by two-way video conference**. (Emphasis
> Supplied)

*Id.* at 1316. In fact, both the Ninth, Tenth and Eleventh Circuits have consistently reversed district courts for allowing video testimony when there were sufficient alternatives. *United States v. Quintero*, 21 F.3d 885, 892 (9th Cir.1994); *United States v. Garcia*, 7 F.3d 885, 887-88 (9th Cir.1993); *United States v. Farley*, 992 F.2d 1122, 1125 (10th Cir.1993); *United States v. Sapse*, 2:10-cr-00370-KJD-RJJ, 3 (D. Nev. Oct. 22, 2012).

Notably, not even the ongoing COVID-19 pandemic and the health risks it posses has been deemed sufficient to warrant allowing video testimony at trial. In *United States v. Pangelinan*, Case No. 19-10077-JWB, 3 (D. Kan. Aug. 31, 2020), the government sought to present the trial testimony of three witnesses by video due to the COVID-19 pandemic, citing that two of the witnesses' health conditions and the health conditions of those two witnesses' family members, as well as a state requirement that the witnesses quarantine for 14 days after their return from providing testimony, were sufficient to allow video testimony. The court held that these risks "do not represent a 'necessity' to forego physical confrontation" and denied the government's request. *Id.* at 6-7.

The right of confrontation is critical "where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or

jealousy." *Greene v. McElroy*, 360 U.S. 474, 496 (1959). A key component of testimony for a finder of fact is being able to perceive the witness and his or her nonverbal cues, behaviors, and reactions upon being asked questions. "The simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation. As our sister circuits have recognized, the two are not constitutionally equivalent." *Yates*, 438 F.3d at 1315.

Therefore, for all the reasons stated above, the defense respectfully requests that the Court issue a standing Order as the law of this case, that no video or remote testimony will be allowed at the trial or alternatively, that the Court hold an evidentiary hearing to make sure the conditions set forth in *Craig* have been met.

**4.  Request for Witness List and 3500 Material**

The defense hereby respectfully requests that the Court direct the government to provide a witness list at least seven (7) days before the trial, and to produce 3500 materials at least three (3) days before the trial. This information is necessary for the defense to properly prepare a defense, to avoid unfair surprise at trial, and to provide confidence in the outcome of the trial. *United States v. Newton,* 44 F.3d 913, 918 (11th Cir. 1995) (quoting *United States v. Bagley,* 473 U.S. 667, 678 (1985)).

Under Fed.R.Crim.P. 16(c), the prosecution has a continuing duty to disclose any evidence that is subject to discovery or inspection, but the government need not produce the materials unless there is a request by the defendant, see, e.g., *United States v. Lambert*, 580 F.2d 740, 745 (5th Cir. 1978). Thus, it is a defendant-triggered process such that if the defendant asks for and receives a list of prosecution witnesses, then the prosecution may request a list of defense witnesses. See *Annotated Comments to Fed.R.Crim.P. 16*.

In fact, the Comments to Rule 16 make clear that the Committee "endorses the principle that witness lists are discoverable" and confirms that many States actually require witness lists to be exchanged: "Numerous states require the prosecutor to provide the defendant with a list of prosecution witnesses prior to trial. [These States include Alaska, Arizona, Arkansas, California, Colorado, Florida, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, Oklahoma, Oregon, Tennessee, and Utah. See Advisory Committee Note, House Document 93–292, at 60.]" *Id*. Furthermore, in *United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003), for example, the district court dismissed the indictment with prejudice on the ground of prosecutorial misconduct. According to the court, the prosecutor's withholding and/or untimely production of evidence and other material discoverable under

*Brady*, *Giglio*, and the *Jencks Act*, denied the defendants rights guaranteed them by the Fifth and Sixth Amendments. *Id*. at 1216. Although in that case the Eleventh Circuit ended up reversing the district court's discretionary ruling, it has become a cautionary tale for prompt compliance with disclosure obligations and for erring on the side of caution in terms of timing for such disclosures.

The same analysis applies to the defense's request for production of 3500 material prior to trial. Since the prosecutor has an "ongoing" duty to disclose exculpatory evidence, as well as any impeachment evidence that is likely to cast doubt on the reliability of a witness whose testimony "may well be determinative of guilt or innocence" (*High v. Head*, 209 F.3d 1257, 1265 n. 8 (11th Cir. 2000)(citing *United States v. Bagley*, 473 U.S. 667 (1985) and *Giglio v. United States*, 405 U.S. 150, 154 (1972)), it is incumbent upon the government to provide 3500 materials in time for it to be used effectively. Delayed disclosure may be grounds for reversal "if the defendant can show prejudice, e.g., the material came so late that it could not be effectively used." *United States v. Beale*, 921 F.2d 1412, 1426 (11th Cir. 1991).

Similarly, in *United States v. Bueno-Sierra*, 99 F.3d 375, 380 (11th Cir. 1996), the court held that impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness. The

definition of 'effectively' varies depending on the facts and complexity of each case, but both the *Jencks Act* 18 U.S.C. § 3500(c)[3] and Fed.R.Crim.P. 26.2, contemplate the necessity of granting a continuance following a witnesses' direct testimony to allow defense counsel to properly prepare for cross-examination using 3500 materials provided by the government.

Therefore, rather than having to entertain repeated requests for recess to prepare for cross-examination, and particularly in light of the nature of the allegations in this case and the expected number of witnesses, the defense respectfully requests that 3500 material be provided three (3) days before the start of trial.

## 5.  No Expert Witnesses Have Been Identified

During the pre-trial conference held on January 6, 2021, the Court instructed the government to identify any expert witnesses it sought to use at trial on or before February 16, 2021. In response, the government indicated that it did not have any expert witnesses. Thus, the defense now seeks confirmation from the Court that no expert testimony will be permitted at trial since the government did

---

[3] 18 U.S.C. §3500(c) states in pertinent part: "the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial."

not identify any experts and did not comply with the requirements of Rule

16(a)(1)(G).

Specifically, Rule 16(a)(1)(G) states: "At the defendant's request, the

government must give to the defendant a written summary of any testimony that

the government intends to use under Rules 702, 703, or 705 of the Federal Rules of

Evidence during its case-in-chief at trial. [...] The summary provided under this

subparagraph must describe the witness's opinions, the bases and reasons for those

opinions, and the witness's qualifications." In determining whether expert

testimony is admissible under Federal Rule of Evidence 702, the district court

considers whether: (1) the expert is qualified to testify competently regarding the

matters he intends to address; (2) the methodology by which the expert reaches his

conclusions is sufficiently reliable  as determined by the sort of inquiry mandated

in [*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)]; and (3) the

testimony assists the trier of fact, through the application of scientific, technical, or

specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Delva*, 922 F.3d 1228, 1251 (11th Cir. 2019) (footnote and internal

quotation marks omitted).  The party offering the expert testimony bears the

burden of establishing the expert's qualification, reliability, and helpfulness.

Here, the government failed to identify any experts it intends to use during its case-in-chief and thus no summary reports were provided to the defense. Therefore, the government should be precluded from seeking to introduce expert testimony at trial either directly or under the guise of a lay witness' testimony.

## 6.  Evidence Relating to Total Amount of Losses Alleged in the Indictment

According to the government, the total amount of financial losses alleged in this case are around $14 million dollars. However those allegations are speculative at best, and remain to be proven. For that reason, the defense respectfully requests that the government be precluded from making reference to the total amount of losses alleged until those losses are actually proven at trial. A ruling to the contrary would result in prejudice to the defendant and be contrary to the mandate of Fed.R.Evid. 403.

Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A determination of whether or not evidence is admissible under Rule 403 requires the court to engage in a balancing test "weighing competing considerations, and the balance to be struck is largely committed to the discretion of the district court, which has far more

experience in evidentiary matters and is better equipped to decide them than an appellate court." *United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir.2006) ("Close questions of admissibility under Rule 403 give rise to the abuse of discretion standard of review and fall squarely within the ambit of the district court's sound discretion.")

It is well-settled that "the district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice…" *United States v. Jernigan,* 341 F.3d 1273, 1285 (11th Cir. 2003), and therefore the defense seeks to highlight to importance of this particular issue prior to the start of trial and minimize the otherwise necessary interruptions and objections to be presented during the trial.

It is the defense's position that allowing the government to make references to alleged losses in the millions of dollars before such evidence is presented to the jury (such as in the government's opening statements), and without any reason to believe such extensive losses can actually be proven, let alone attributed to Addaquay, would be highly prejudicial and misleading to the jury. Therefore, the defense respectfully requests a ruling from the Court that the government be restricted to the proven loses at trial.

## CONCLUSION

For all the reasons stated herein, the defense respectfully requests that the Court grant the evidentiary rulings specified above, including without limitation (1) to restrict the government's ability to introduce statements or testimony from unindicted co-conspirators who were not identified by the government; (2) to hold an evidentiary hearing regarding the admissibility of any co-conspirator statements the government intends to use in its case-in-chief; (3) to prevent the government from having witnesses testify remotely at trial; (4) to instruct the government to provide a Witness List at least seven days before trial, and 3500 material at least three days before trial; (5) to prevent the government from introducing expert witness testimony at trial since no experts have been identified or summary reports provided; and (6) to prevent the government from making reference to the total amount of losses alleged in the Indictment until those losses are actually proven at trial.

This the 26th day of September , 2022

/s/ Rodney Williams

Law Office of Rodney Williams, LLC
315 W. Ponce De Leon
Suite 915
Decatur, Georgia 30030
notguilty@attyrodneywilliams.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendant's Proposed Motions in Limine was formatted in Times New Roman 14pt., in accordance with Local Rule 5.1C, and was electronically filed this day with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

This 26th day of September, 2022.

/s/ *Rodney Williams*
Rodney Williams
Bar No. 765415
Attorney for Thomas Addaquay

Law Office of Rodney Williams, LLC
315 W. Ponce De Leon
Suite 915
Decatur, Georgia 30030
Notguilty@attyrodneywillaims.com

/s/ *Robert Daniel*
Robert Daniel
Bar No. 204404
Attorney for Thomas Addaquay

Law Office of Robert Daniel, LLC
191 Peachtree Tower
191 Peachtree Street, NE,Suite 3960
Atlanta, Georgia 30303
RobDaniel@RobertDaniellaw.com